UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DAVID EYKYN and MIKE EYKYN, Individually and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | Civil Action No. A:14-cv-00922-SS (Consolidated Lead Case) |
| v. | § § | |
| MULTIMEDIA GAMES HOLDING COMPANY, INC., et al., | § § § | |
| Defendants. | § § | |

| | | |
|---|---|---|
| CHRISTOPHER COFFMAN, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | Civil Action No. A:14-cv-00966-SS |
| v. | § § | |
| MULTIMEDIA GAMES HOLDING COMPANY, INC., et al., | § § § | |
| Defendants. | § § | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE AND
CLASS ACTION SETTLEMENT**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND OF THE LITIGATION.......................................................... 3

III.   THE SETTLEMENT TERMS.......................................................................... 7

IV.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED....... 9

       A.    The Role of the Court .......................................................................... 9

       B.    The Proposed Settlement Is Reasonable ............................................. 10

       C.    The Proposed Settlement Class May Be Certified................................ 13

             1.    The Proposed Settlement Class Satisfies Rule 23(a) .............. 13

                   a.    The Numerosity Requirement Is Satisfied................... 13

                   b.    The Commonality Requirement Is Satisfied................. 14

                   c.    The Typicality Requirement Is Satisfied ..................... 14

                   d.    The Adequacy Requirement Is Satisfied...................... 14

             2.    The Proposed Settlement Satisfies Rule 23(b)........................ 15

       D.    The Proposed Plan of Class Notice...................................................... 17

       E.    Proposed Schedule of Events................................................................ 19

V.     CONCLUSION................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Ayers v. Thompson*,
   358 F.3d 356 (5th Cir. 2004) ...................................................................................9

*Castano v. American Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) ...................................................................................13

*In re China Intelligent Lighting & Elecs., Inc. Secs. Litig.*,
   No. CV 11-2768 PSG, 2013 U.S. Dist. LEXIS 155091 (C.D. Cal. Oct. 25, 2013)................16

*Hamilton v. First Am. Title Ins. Co.*,
   266 F.R.D. 153 (N.D. Tex. 2010) ...........................................................................15

*Langbecker v. Elec. Data Sys. Corp.*,
   476 F.3d 299 (5th Cir. 2007) .................................................................................17

*Lightbourn v. Cnty. of El Paso*,
   118 F.3d 421 (5th Cir. 1997) .................................................................................14

*Lohocky v. Tidel Techs., Inc.*,
   220 F.R.D. 491 (S.D. Tex. 2004) ...........................................................................14

*McNamara v. Bre-X Minerals Ltd.*,
   214 F.R.D. 424 (E.D. Tex. 2002) .....................................................................10, 13

*Mullen v. Treasure Chest Casino, L.L.C.*,
   186 F.3d 620 (5th Cir. 1999) .................................................................................13

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) ...............................................................................18

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   164 F.R.D. 362 (S.D.N.Y. 1996) ...........................................................................19

*Rodriguez v. Countrywide Home Loans, Inc.*,
   695 F.3d 360 (5th Cir. 2012) .................................................................................16

*Smith v. Crystian*,
   91 F. App'x 952 (5th Cir. 2004) .........................................................................9, 10

*Stott v. Capital Fin. Servs., Inc.*,
   277 F.R.D. 316 (N.D. Tex. 2011) ...........................................................................13

*Unger v. Amedisys, Inc.*,
   401 F.3d 316 (5th Cir. 2005) .................................................................................14

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ................................................................................................16

*Wolf v. Frank,*
    477 F.2d 467 (5th Cir. 1973) ......................................................................................12

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

*Manual for Complex Litigation, Fourth* § 13.14 (2004)..................................10, 13, 18

## I.     INTRODUCTION

Pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), 23(e), and 23.1, Plaintiffs David Eykyn and Mike Eykyn, and Christopher Coffman (collectively, "Lead Plaintiffs"), on behalf of themselves and members of the Settlement Class (defined herein), respectfully request that the Court grant preliminary approval of the proposed settlement of this derivative and class action litigation (the "Action") against Defendants Multimedia Games Holding Company, Inc. ("MGAM"), Global Cash Access Holdings, Inc. and Movie Merger Sub, Inc. (collectively, "GCA"), Stephen J. Greathouse, Stephen P. Ives, Neil E. Jenkins, Michael J. Maples, Sr., Justin A. Orlando, Patrick J. Ramsey, and Robert D. Repass (the "Individual Defendants" or the "Board," and, collectively with MGAM and GCA, "Defendants").  Specifically, Lead Plaintiffs seek entry of the Preliminary Approval Order (the "Preliminary Order")[1] that will: (i) preliminarily approve the settlement set forth in the Stipulation of Settlement dated April 7, 2015 (the "Stipulation" or "Settlement")[2]; (ii) preliminarily certify, for settlement purposes only, a non-opt-out class consisting of Plaintiffs and any and all record holders and beneficial owners of any shares(s) of MGAM at any time during the period beginning on and including September 8, 2014, through and including December 19, 2014, including any and all of their respective successors-in-interest, predecessors, legal representatives, trustees, executors, administrators, heirs, assignees, or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, but excluding Defendants, the officers and directors of MGAM, and, at all relevant times, the members of their

---

[1]  A copy of the Preliminary Order is attached as Exhibit A to the Stipulation.

[2]  A copy of the Stipulation is attached as Exhibit 1 to the Declaration of Thomas E. Bilek in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Derivative and Class Action Settlement ("Bilek Decl.") filed herewith.

immediate families, their legal representatives, heirs, successors, and assigns, and any entity in which Defendants have or had a majority interest (the "Settlement Class"); (iii) approve as to form, manner, and content of the two-part Notice to be provided to the class[3] and order the direct mailing of the Summary Notice; and (iv) schedule a hearing (the "Settlement Hearing") at which the Court will consider final approval of the Settlement.[4]

The proposed Settlement Class satisfies the requirements of Rule 23(a) in that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(1)-(4).  The proposed Settlement Class: (1) may be maintained under Rule 23(b)(1)(A) because the prosecution of separate actions by individual members of the Settlement Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Settlement Class, which would establish incompatible standards of conduct for Defendants; (2) may be maintained under Rule 23(b)(1)(B) because adjudications with respect to individual members of the Settlement Class would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; and (3) may be maintained under Rule 23(b)(2) because Defendants are alleged to have acted on grounds that apply generally to the Settlement Class, and final injunctive or declaratory

---

[3]  Copies of the Notice and Summary Notice are attached as Exhibit B and Exhibit C to the Stipulation. The [Proposed] Judgment and Order of Dismissal With Prejudice is attached as Exhibit D to the Stipulation.

[4]  Although this Motion is unopposed, this Memorandum of Law is submitted solely by Lead Plaintiffs and does not in all instances represent the views of Defendants.

relief is appropriate with respect to the Settlement Class as a whole.  The proposed Settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).

The proposed form of Notice adequately informs the Settlement Class members of (1) the terms and conditions of the Settlement, (2) the date of the Settlement Hearing; and (3) Settlement Class members' right to object to the Settlement and to be heard at the Settlement Hearing.  The Summary Notice will be mailed to the last known address of each reasonably identifiable member of the Settlement Class by U.S. Mail, first class postage pre-paid, in accordance with the Preliminary Order.  A more detailed notice may be obtained by class members who wish to receive more information by following the instructions on the Summary Notice.  Thus, the form and method of Notice is reasonable.

As such, Lead Plaintiffs and their respective counsel (together, "Co-Lead Counsel")[5] believe that the Settlement is in the best interests of the Settlement Class and respectfully request that the Court preliminarily approve the Settlement and enter the Preliminary Order as submitted.

## II.      BACKGROUND OF THE LITIGATION

On September 8, 2014, the Company entered into a merger agreement (the "Merger Agreement") with GCA pursuant to which, among other things, GCA would acquire MGAM (the "Proposed Transaction"), subject to a vote in favor of the Merger Agreement by the holders of a majority of shares of MGAM entitled to vote to approve the Merger Agreement.

On September 30, 2014, MGAM and GCA filed a preliminary proxy statement/prospectus in a Form S-4 (the "Preliminary Proxy") relating to the then Proposed Transaction with the SEC.

---

[5] Co-Lead Counsel are Faruqi & Faruqi, LLP (the "Faruqi Firm"), Brodsky & Smith, LLC ("Brodsky & Smith"), and Liaison Counsel The Bilek Law Firm, LLP ("Bilek Law").

On October 3, 2014, Thomas Baird filed a putative class action (the "Baird Action") alleging claims against Defendants for breaches of fiduciary duties, aiding and abetting, and violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") in connection with the then Proposed Transaction.

On October 20, 2014, counsel for Thomas Baird sent a demand letter on Baird's behalf to MGAM's Board of Directors (the "Demand Letter").  In the demand letter, Baird requested that MGAM commence a civil action against each of its directors, and third parties identified in the demand letter, as a result of the directors' breaches of fiduciary duties alleged in the demand letter, and asserted that the preliminary proxy filed by MGAM on September 30, 2014 (the "Preliminary Proxy") failed to provide MGAM's shareholders with material information concerning the process leading up to the consummation of the Merger Agreement and the financial analyses performed in support of the MGAM's financial advisor's fairness opinion.

On October 22, 2014, MGAM and GCA filed its final Schedule 14A proxy statement with the Securities and Exchange Commission (the "Proxy") in connection with the Merger.

On October 23, 2014, counsel for Christopher Coffman, an MGAM shareholder, sent a demand letter on Coffman's behalf to MGAM's Board of Directors, and filed a substantially similar putative class action and shareholder derivative action on behalf of MGAM and its shareholders against Defendants in connection with the Merger (the "Coffman Action").

On October 27, 2014, counsel for Daniel Fumia, David Eykyn, and Mike Eykyn sent a demand letter on their behalf to MGAM's Board of Directors.  On October 28, 2014, Daniel Fumia, David Eykyn, and Mike Eykyn filed an Amended Derivative and Direct Class Action Complaint in the Baird Action in which they substituted as Plaintiffs for Thomas Baird and

asserted putative class and shareholder derivative claims against Defendants in connection with the Merger.

Also on October 28, 2014, counsel for the MGAM Defendants voluntarily produced to counsel for Christopher Coffman, Daniel Fumia, David Eykyn, and Mike Eykyn documents relating to the Merger, subject to the terms of the Confidentiality and Protective Order entered on February 24, 2015 (Dkt. No. 28).

On November 5, 2014, counsel for Christopher Coffman, Daniel Fumia, David Eykyn, Mike Eykyn, and Defendants filed a stipulation and agreed motion to consolidate the Baird Action and the Coffman Action (together, the "Federal Actions"). Daniel Fumia voluntarily dismissed his claims against Defendants in the Federal Actions, with Christopher Coffman, David Eykyn, and Mike Eykyn ("Plaintiffs") remaining as plaintiffs in the Federal Actions. The Federal Court granted the agreed motion to consolidate the Federal Actions.

Meanwhile, on October 15, 2014, Greggory Lewis filed a substantially similar putative class action and shareholder derivative action in the District Court of Travis County, 201st Judicial District, on behalf of MGAM and its shareholders against Defendants in connection with the Merger (the "State Court Action"). In November 2014, all Defendants responded to the State Court Action with, among other things, motions to stay the State Court Action in favor of the first-filed Federal Actions. While the State Court Action remains pending, no further activity has occurred in that case since November 20, 2014. This proposed settlement will release all claims in the Federal Actions and in the State Court Action.

Based upon a review of the materials produced by Defendants and the depositions taken by Plaintiffs, Plaintiffs recognized that there were serious obstacles to succeeding on their claims, and concluded that the most beneficial consideration to be provided to MGAM

shareholders in connection with the Action was the disclosure of additional information in connection with the shareholder vote with respect to the Proposed Transaction.

The parties thereafter engaged in arm's-length discussions and negotiations regarding a potential resolution of the claims asserted in the Action.  In connection with such discussions and negotiations, Plaintiffs proposed to Defendants various supplemental disclosures that Plaintiffs believed should have been made originally in connection with the Proposed Transaction. Following arm's-length negotiations, Defendants agreed, in order to settle the Action, to provide the supplemental disclosures.

This agreement was memorialized in a Memorandum of Understanding ("MOU") entered into by the parties on November 20, 2014.  MGAM made such final supplemental disclosures in a Form 8-K dated November 21, 2014 (the "Supplemental Disclosures"), and filed with the Securities and Exchange Commission ("SEC").

At a duly called meeting on December 3, 2014 (the "Meeting"), the MGAM shareholders voted in favor of the Merger; and the Merger was subsequently consummated on December 19, 2014.

Following the execution of the MOU, Plaintiffs' Co-Lead Counsel conducted additional discovery to confirm the reasonableness of the terms of the parties' agreement.  In particular, Plaintiffs' Co-Lead Counsel reviewed additional non-public documents produced by Defendants and conducted the depositions of MGAM Director and Chief Executive Officer Patrick J. Ramsey and of a representative of Wells Fargo Securities, LLC, ("Wells Fargo"), financial advisors to MGAM for the Merger (documents and depositions together, the "Confirmatory Discovery").  Plaintiffs' Co-Lead Counsel have determined based on their experience litigating

these types of cases that the settlement described below is fair and reasonable to MGAM and its shareholders.

Throughout the litigation, Co-Lead Counsel conducted a thorough investigation into the facts and law relating to the Action.  For instance, Lead Plaintiffs retained and consulted with a financial expert, reviewed with the expert the Preliminary Proxy and the Supplemental Disclosures, discovery materials, and relevant public information.  After fully analyzing the merits of all parties' contentions, including the impact of the proposed Settlement on Lead Plaintiffs and absent Settlement Class members, Lead Plaintiffs and Co-Lead Counsel entered into the Stipulation with all relevant parties providing for the Settlement described below. Importantly, during the negotiations, all parties had a clear view of the strengths and weaknesses of their respective claims and defenses, and the Settlement is the product of arm's-length negotiations between the parties, who were all represented by counsel with extensive experience and expertise in shareholder litigation.

## III.     THE SETTLEMENT TERMS

The Settlement required MGAM to disclose certain information to members of the Settlement Class that Lead Plaintiffs believed was material and critical to MGAM shareholders' ability to make a fully informed decision regarding whether to vote for, or against, the Proposed Transaction.

The Supplemental Disclosures, which were set forth in a Form 8-K filed by MGAM with the SEC on November 20, 2014, provided information to MGAM shareholders in advance of the shareholder vote concerning, in part, the following:

- With respect to the Projections provided by MGAM to its shareholders, the Supplemental Disclosures provide a table setting forth the projected after-tax

unlevered free cash flows for the Company, as well as the line items used to derive the unlevered free cash flows.

- With respect to Wells Fargo's *Selected Public Companies Analysis*, MGAM disclosed the specific company by company metrics for the three (3) companies utilized in the analysis (as opposed to only the mean/median provided in the Definitive Proxy).  MGAM also disclosed the specific company by company metrics for the three (3) selected companies that Wells Fargo indicated were reviewed for "reference purposes only" in the Definitive Proxy.  These companies were addressed in Wells Fargo's fairness presentation to the Board but had been excluded from the Definitive Proxy.

- With respect to Wells Fargo's *Selected Precedent Transactions Analysis*, rather than only the high/low range of multiples provided in the Definitive Proxy, the MGAM disclosed the specific transaction by transaction metrics for each deal analyzed.

- With respect to Wells Fargo's *Discounted Cash Flow Analysis*, MGAM disclosed MGAM's actual 12.43% weighted average cost of capital ("WACC"), which figure was not provided in the Definitive Proxy.  Further, MGAM disclosed the range of perpetuity growth rates, range of terminal values and range of implied enterprise values derived from the analysis.  Additionally, as opposed to simply indicating in the Definitive Proxy that the implied equity values in the analysis derived from a "range of terminal value EBITDA multiples," MGAM specifically provided in the Supplemental Disclosures the enterprise value range and equity

value range for MGAM and resulting implied share price range for terminal value EBITDA multiple of 7.5x.

- With respect to the fees due to Wells Fargo for rendering its fairness opinion, MGAM disclosed the breakdown between the fixed and significant contingent portion of its fee arrangement with its banker, including the fact that $7.4 million was contingent on consummation of the deal, as well as the fees earned by Wells Fargo from MGAM for the 2 year period ending September 8, 2014.

- The composition of the Company's Regulatory Compliance Committee, as well as information regarding potential conflicts of interest for the Committee.

The Stipulation provides that, if the Court approves the Settlement, and in consideration of the Supplemental Disclosures, Lead Plaintiffs, on behalf of the Settlement Class, agree to release all claims asserted against Defendants in the Action or in any action, proceeding, or shareholder demand involving the facts and circumstances that gave rise to the Action.

## IV.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.    The Role of the Court

Rule 23.1(c) of the Federal Rules of Civil Procedure provides that a "derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval." Similarly, Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class wide basis.  Initially, the Fifth Circuit recognizes a "strong judicial policy favoring the resolution of disputes through settlement." *Smith v. Crystian*, 91 F. App'x 952, 955 (5th Cir. 2004) (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)).  As such, approval of the proposed settlement is left to the discretion of the Court.  *Ayers v. Thompson*, 358 F.3d 356, 368 (5th Cir. 2004).  "Approval of a class action settlement involves

a two-step process.  First, the Court makes a preliminary fairness evaluation of the proposed terms of settlement submitted by counsel." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002); *see also Manual for Complex Litigation, Fourth* ("Manual 4th") § 13.14 (2004).  "Second, if the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *Id.*; *see also* Manual 4th § 13.14 (2004).

### B.    The Proposed Settlement Is Reasonable

Prior to granting preliminary approval of the Settlement, the Court must first determine whether the Settlement is fair, adequate, and reasonable.  To determine whether the Settlement is reasonable, the Court considers six factors, including:

> (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles [to] prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Smith*, 91 F. App'x at 955 n.3 (5th Cir. 2004) (citing *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978)).  In other words, preliminary approval should be granted where, as here, the settlement appears sufficiently reasonable and offers the Settlement Class members opportunity to object.  Here, all considerations support preliminary approval of the Settlement.

From initiation of this litigation, Lead Plaintiffs vigorously pursued this case and sought discovery in an expedited manner to cure material omissions in the Preliminary Proxy.  Co-Lead Counsel and Defendants' Counsel were able to agree on discovery to explore Lead Plaintiffs' concerns regarding the Proposed Transaction, prior to MGAM holding a special meeting of its shareholders to vote on the Proposed Transaction.  For example, Lead Plaintiffs, through the

efforts of Co-Lead Counsel (who have extensive experience in litigation of this nature),[6] sought and received core documents critical to evaluating the fairness of the consideration offered in the Proposed Transaction and the material omissions in the Proxy, including: (i) minutes of the MGAM Board and (ii) presentations to the MGAM Board by financial advisor Wells Fargo.  Co-Lead Counsel worked extensively with their financial expert, who has extensive experience in valuing companies like MGAM, to evaluate the consideration to be received by MGAM shareholders and to identify material omissions in the Preliminary Proxy to be cured before the December 3, 2014 vote of MGAM shareholders.

Even following the closing of the Proposed Transaction, Lead Plaintiffs, through Co-Lead Counsel, engaged in confirmatory discovery.  During the course of discovery, Lead Plaintiffs were able to fully ascertain the strengths and weaknesses of their claims.  Moreover, through the depositions of Mr. Ramsay and the Wells Fargo representative, Lead Plaintiffs assured themselves that the process undertaken by the Individual Defendants to sell the Company and how the Individual Defendants valued the Company was satisfactory.  Lead Plaintiffs, only after full evaluation of the strengths and weaknesses of their claims, arrived at the belief that the case favors Settlement.

Further ensuring that the settlement negotiations were extensive and adversarial, Co-Lead Counsel and Defendants' Counsel exchanged proposals and counter-proposals concerning the nature and scope of the Supplemental Disclosures.  Ultimately, Defendants agreed to provide MGAM shareholders with more specific information including, *inter alia*, (i) the unlevered free

---

[6]  Firm resumes of the Faruqi Firm, Brodsky & Smith, and Bilek Law are attached as Exhibits 2, 3, and 4 to the Bilek Decl.

cash flows of the Company as well as the line items in MGAM's projections to derive the cash flows; (ii) critical assumptions and evaluative decisions made by Wells Fargo in its capacity as the financial advisor for the Company when it rendered a fairness opinion on the deal, as well as information regarding potential conflicts of interest for Wells Fargo; and (iii) the makeup of, and the decision making process carried out by, the MGAM Regulatory Compliance Committee in exploring alternative options to GCA's offer.  These disclosures addressed many of the issues raised by Lead Plaintiffs in the litigation.

At the conclusion of these negotiations, Lead Plaintiffs and Co-Lead Counsel unanimously agreed to enter into the Settlement.  The Settlement ensured that MGAM shareholders were given the material information necessary for them to make a fully informed decision about whether to vote for or against the Proposed Transaction.  *See Wolf v. Frank*, 477 F.2d 467, 480 (5th Cir. 1973) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395-96 (1970)) (internal citations omitted) (observed that "an increasing number of lower courts have acknowledged that a corporation may receive a 'substantial benefit' from a [shareholders' action] . . ." and that "regardless of the relief granted, private stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute.").

Lead Plaintiffs submit that the proposed Settlement is fair and in the best interests of all shareholders, meets all indicia of fairness and merits the Court's preliminary approval.

Accordingly, Lead Plaintiffs respectfully request that the Court preliminarily approve the Settlement and enter the Preliminary Order as submitted.[7]

### C.    The Proposed Settlement Class May Be Certified

Prior to granting preliminary approval of a settlement, the Court should first determine whether the proposed Settlement Class is a proper class for settlement purposes.  *See McNamara*, 214 F.R.D. at 426-27; *see also* Manual 4th § 21.632 (2004).  The Court has broad discretion within the framework of Rule 23 in determining whether to certify the proposed Settlement Class.  *See Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).  The Court may certify a class where plaintiffs demonstrate that the proposed class and proposed class representatives meet the requirements of Rule 23(a)(1-4) (i.e., numerosity, commonality, typicality, and adequacy of representation).  Fed. R. Civ. P. 23(a)(1)-(4).

### 1.    The Proposed Settlement Class Satisfies Rule 23(a)

### a.    The Numerosity Requirement Is Satisfied

The class is so numerous that joinder of all members is impracticable.  According to the Company's SEC filing, as of November 3, 2014, approximately 29.7 million shares were outstanding.  *See Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 624 (5th Cir. 1999) (finding a class of 100 to 150 members satisfies numerosity and any more than 40 members should raise a presumption that joinder is impracticable).  In addition, the Settlement Class members are too geographically dispersed to be easily joined into one action.  *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 324 (N.D. Tex. 2011).  Because there likely are thousands of

---

[7] If preliminary approval is granted, Settlement Class members will receive Notice of the Settlement in the form of a Summary Notice published in *Investor's Business Daily*, which contains certain general information regarding the terms of the Settlement as well as instructions on how to obtain a more detailed notice, and in the form of a Settlement Notice mailed to all persons who held of record MGAM stock at any time during the Class Period.  Importantly, this two-tiered notice system will give class members an opportunity to lodge any objections if they so wish.

MGAM shareholders dispersed throughout the United States, the proposed Settlement Class satisfies the numerosity requirement under Federal Rules of Civil Procedure 23(a)(1).

### b.      The Commonality Requirement Is Satisfied

The commonality requirement under Rule 23(a)(2) is met where, as here, "there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. Cnty. of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997). Here, issues common to the Settlement Class include, *inter alia*, whether Defendants violated Sections 14(a) and 20(a) of the Exchange Act and whether the Individual Defendants breached their fiduciary duties of undivided loyalty, independence, due care and candor with respect to Lead Plaintiffs and the other members of the Settlement Class in connection with the Proposed Transaction.. As these claims affect the entirety of the Settlement Class equally, the proposed Settlement Class meets the commonality requirement.

### c.      The Typicality Requirement Is Satisfied

The typicality requirement under Federal Rules of Civil Procedure 23(a)(3) is satisfied because Lead Plaintiffs' claims arise from a similar course of conduct and assert the same legal theories as the claims of all Settlement Class members. *See Lohocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 500 (S.D. Tex. 2004) (typicality is found where claims raised by plaintiffs have "a common source and rest upon the same legal and remedial theories" and "factual differences will not defeat typicality"). Here, the typicality requirement is satisfied by Lead Plaintiffs because their claims arise from the same nucleus of operative facts (i.e., the Proposed Transaction between MGAM and GCA). Thus, Lead Plaintiffs' claims are typical of the Settlement Class.

### d.      The Adequacy Requirement Is Satisfied

Lead Plaintiffs have adequately represented the interests of the proposed Settlement Class and have retained counsel qualified to pursue the litigation. *See Unger v. Amedisys, Inc.*, 401

F.3d 316, 320 (5th Cir. 2005) ("[C]lass representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members."). The adequacy requirement is met where, as here, "(1) the named plaintiffs' counsel [prosecuted] the action zealously and competently; (2) the named plaintiffs possess a sufficient level of knowledge about the litigation to be capable of taking an active role in and exerting control over the prosecution of the litigation; and (3) there are no conflicts of interest between the named plaintiffs and the absent class members." *Hamilton v. First Am. Title Ins. Co.*, 266 F.R.D. 153, 163-64 (N.D. Tex. 2010).

Lead Plaintiffs and Co-Lead Counsel have fairly and adequately represented and protected the interests of all Settlement Class members, as demonstrated by the record showing vigorous prosecution of this litigation. Co-Lead Counsel is well qualified to litigate on behalf of the proposed Settlement Class as they have litigated numerous shareholder class actions throughout the country, including in this jurisdiction.[8] There are no conflicts of interest between Lead Plaintiffs, Co-Lead Counsel, and the Settlement Class members because their interests are aligned. Thus, Lead Plaintiffs and Co-Lead Counsel satisfy the adequacy requirement.

### 2.     The Proposed Settlement Satisfies Rule 23(b)

In addition to meeting all of the requirements of Rule 23(a), the proposed Settlement Class also satisfies both Rule 23(b)(1) and (b)(2). Rule 23(b)(1) authorizes class certification if "prosecuting separate actions by or against individual members would create the risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the

---

[8] *See* Exhibits 2, 3, and 4 to the Bilek Decl.

interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1). Rule 23(b)(2) authorizes class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). A class certified under Rule 23(b)(1) or (b)(2) is mandatory and members of the settlement class **may not** opt out. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011). Because all Settlement Class members are shareholders of the Company challenging the same Proposed Transaction between MGAM and GCA, there is a substantial risk of varying or inconsistent results. Thus, the possibility of conflicting court orders in this litigation shows that the Settlement Class satisfies Rule 23(b)(1). *See e.g., In re China Intelligent Lighting & Elecs., Inc. Secs. Litig.*, No. CV 11-2768 PSG (SSx), 2013 U.S. Dist. LEXIS 155091, at *18 (C.D. Cal. Oct. 25, 2013) ("It would be inefficient to have individual members of the Class—who are likely geographically dispersed, given that CIL was a publicly-traded company—bring separate claims in scattered courts across the country. Such fragmentation would . . . create a risk of inconsistent judgments.").

The Court may also certify a class under Rule 23(b)(2) "if the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Rodriguez v. Countrywide Home Loans, Inc.*, 695 F.3d 360, 365 (5th Cir. 2012). Defendants are alleged to have acted on grounds that are generally applicable to the proposed Settlement Class members in that the Proposed Transaction affects all MGAM shareholders in the same way. In other words, the relief obtained—dissemination of the Supplemental

Disclosures—benefitted all members of the Settlement Class equally.  By providing this material information to shareholders, prior to the shareholder vote—held on December 3, 2014—all MGAM shareholders were able to make an informed decision whether to vote for, or against, the Proposed Transaction.  Accordingly, a mandatory *non opt-out* class should be certified under Rules 23(b)(1) and (b)(2).

### D.    The Proposed Plan of Class Notice

In general, "[n]either a Rule 23(b)(1) or (2) class action requires notice to class members or the option to opt-out."  *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 306 (5th Cir. 2007).  Rule 23(c)(2)(A) provides, however, that the Court "may direct the appropriate notice" to a Rule 23(b)(1) or (b)(2) class.

Rule 23(e)(1) requires the Court "to direct notice in a reasonable manner to all class members who would be bound by the [Settlement] proposal."  Fed. R. Civ. P. 23(e)(1).  Here, Lead Plaintiffs and Defendants propose a two-tiered notice system by which (i) a short form notice (the form of which is attached to the Stipulation as Ex. C thereto) will be published in *Investor's Business Daily* and (ii) a detailed notice (the form of which is attached to the Stipulation as Ex. B thereto) will be mailed to all persons who held of record MGAM common stock at any time during the Class period as set forth in the books and records maintained by or on behalf of MGAM, at their respective addresses set forth in such books and records.  The form of detailed notice sets forth the background and procedural history of this litigation, including the claims asserted against Defendants; a summary of the settlement terms, including the specific Settlement Disclosures; an explanation of the persons and claims being released under the Settlement; a detailed explanation of reasons for the Settlement; a description of the Class; the date, time and place of the hearing for final approval; a statement of the Class members' right to appear and object with or without counsel and the procedures which must be followed to be

heard; a statement that Plaintiffs' Co-Lead Counsel intend to petition for an award of attorneys' fees and expenses, and whom to contact if more information about the Settlement is desired. *See* Stipulation at ¶ 3.2. The proposed method of Notice comports with the requirements of due process.

"The fairness hearing notice should alert the class that the hearing will provide class members an opportunity to present their views on the proposed settlement and to hear arguments and evidence for and against the terms." Manual 4th § 21.633 (2004). The notice "should tell objectors to file written statements of their objections with the clerk of court by a specified date in advance of the hearing and to give notice if they intend to appear." *Id*. The notice must "contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member." *In re Nissan Motor Corp. Antitrust Litig*., 552 F.2d 1088, 1104 (5th Cir. 1977). The notice must also "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *Id*. at 1105.

The Notice here satisfies these requirements because it describes the nature, history, and status of the litigation; sets forth the definition of the Settlement Class; describes the Settlement Class as mandatory; states the claims and issues; says that Settlement Class members may enter an appearance through their own counsel; and advises of the binding effect of the Settlement approval proceedings on Settlement Class members. The Notice describes the Settlement; sets out the amount of attorneys' fees and expenses that Co-Lead Counsel intend to seek in connection with final Settlement approval; provides contact information for Settlement Class counsel; and summarizes the reasons the parties are proposing the Settlement. The Notice also

states the date, time, and place of the Settlement Hearing, and the procedures for commenting on the Settlement and appearing at the hearing.   Because the Notice satisfies all applicable requirements, the Court should approve the proposed form and method of Notice to the Settlement Class.

The proposed notice therefore satisfies the requirements of due process.  *See, e.g., In re Prudential Sec. Inc. Ltd. P'ships Litig*., 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (to satisfy due process, notice must be reasonably calculated to apprise interested parties of the pendency of the actions and afford them an opportunity to present their objections).

### E.       Proposed Schedule of Events

In connection with the preliminary approval of Settlement, the parties request that the Court establish dates by which Notice of the Settlement will be sent to potential Settlement Class members and by which Settlement Class members may object to the Settlement, and set the final approval hearing date.[9]   The following is a proposed schedule of events leading to the final approval hearing:

---

[9]  Additionally, in connection with the Settlement, MGAM (or its successor(s) in interest and/or insurer(s)) has agreed to pay Co-Lead Counsel's attorneys' fees and expenses, as awarded by the Court, in an amount not to exceed $310,000 (the "Fee Award").  The Fee Award was negotiated after all substantive terms of the Settlement were agreed to by the parties.  Lead Plaintiffs will submit further briefing in support of approval of the Fee Award to the Court prior to the final Settlement Hearing.

| **EVENT** | **DATE** |
| --- | --- |
| Deadline for mailing the Notice to the Settlement Class and for publishing the Summary Notice in *Investor's Business Daily* | Within fourteen (14) calendar days following entry of the Preliminary Order |
| Lead Plaintiffs' motion for final approval of the Settlement and application for an award of attorneys' fees and expenses ("Motion for Final Approval") | At least twenty-eight (28) calendar days prior to the final Settlement Hearing |
| Defendants' Counsel shall file with the Court an appropriate affidavit or declaration with respect to the preparation and mailing of the Notice to the Settlement Class | At least fourteen (14) calendar days prior to the final Settlement Hearing |
| Last day for Defendants to file their opposition, if any, to Lead Plaintiffs' motion for final approval of the Settlement | At least fourteen (14) calendar days prior to the final Settlement Hearing |
| Last day for Class Members to file objections to Settlement | At least fourteen (14) calendar days prior to the final Settlement Hearing |
| Last day for Defendants to file and serve affidavit or declaration proof of dissemination of Notices | Ten (10) calendar days prior to the final Settlement Hearing |
| Last day to file and serve objections to the Settlement and/or Lead Plaintiffs' application for attorneys' fees and expenses | Five (5) calendar days prior to the final Settlement Hearing |
| Final Settlement Hearing and Hearing on Lead Plaintiffs' application for attorneys' fees | At the convenience of the Court, at least sixty (60) calendar days following Notice to the Settlement Class |

This schedule is similar to those used in numerous class action settlements and provides due process to the Settlement Class with respect to their rights concerning the Settlement.

## V.     CONCLUSION

Lead Plaintiffs respectfully request that the Court enter the accompanying Preliminary Order, thereby preliminarily approving the Settlement, conditionally certifying the Settlement Class for settlement purposes, directing that Notice of the proposed Settlement be provided to the

proposed Settlement Class, and setting a date for the final Settlement Hearing (and other applicable deadlines).

       DATED:  April 16, 2015.

                                    Respectfully submitted,

                                    */s/ Thomas E. Bilek*
                                    Thomas E. Bilek
                                    State Bar No. 02313525
                                    **THE BILEK LAW FIRM, L.L.P.**
                                    700 Louisiana, Suite 3950
                                    Houston, TX  77002
                                    (713) 227-7720

                                    Juan E. Monteverde
                                    James M. Wilson, Jr.
                                    **FARUQI & FARUQI, LLP**
                                    369 Lexington Avenue, Tenth Floor
                                    New York, NY  10017
                                    Tel:  212-983-9330
                                    Fax: 212-983-9331

                                    Evan J. Smith
                                    Marc L. Ackerman
                                    **BRODSKY & SMITH, LLC**
                                    Two Bala Plaza, Suite 510
                                    Bala Cynwyd, PA  19004
                                    610-667-6200
                                    610-667-9029 (fax)

                                    *Counsel for Lead Plaintiffs*

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed via the TXW CM/ECF system on April 16, 2015, which caused an electronic copy of same to be served automatically upon all counsel of record.


_/s/ Thomas E. Bilek_
Thomas E. Bilek